## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES E. DORMAN, Individually and on Behalf of All Others Similarly Situated, | Case No. 20-cv-10788 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| RESTAURANT BRANDS INTERNATIONAL INC., JOSÉ E. CIL, MATTHEW DUNNIGAN, JOSHUA KOBZA, and ALEXANDRE MACEDO, | |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff James E. Dorman ("Plaintiff") alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Restaurant Brands International Inc. ("Restaurant Brands" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.      NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal class action on behalf of a class of all persons and entities who purchased or otherwise acquired Restaurant Brands common stock between April 29, 2019, and October 28, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Restaurant Brands, a Canadian corporation headquartered in Toronto, Ontario, Canada, is one of the world's largest restaurant chains with over 27,000 Tim Hortons, Burger King, and Popeyes restaurants in more than 100 countries and U.S. territories as of December 31, 2019. Restaurant Brands's common stock trades in the United States on the New York Stock Exchange ("NYSE") under the ticker symbol "QSR."

3.      On April 24, 2018, Restaurant Brands announced a new strategy designed to improve performance within the Company's Tim Hortons brand.  Specifically, the "Winning Together Plan" would focus on three key pillars: restaurant experience; product excellence; and brand communications.

4.      On March 20, 2019, Restaurant Brands announced "Tims Rewards"—a new loyalty program for Tim Hortons customers in Canada.  Under the Tims Rewards program, customers would be eligible for a free hot brewed coffee, hot tea, or baked good after every seventh paid visit to a participating Tim Hortons restaurant.  On April 10, 2019, Restaurant Brands announced that it was expanding the Tims Rewards program to include customers in the United States.

5.      Throughout the Class Period, Defendants repeatedly touted the implementation and execution of the Company's Winning Together Plan and Tims Rewards loyalty program.  On the heels of the Company touting the benefits of these initiatives, the Company completed two stock

offerings on or about August 12, 2019, and September 5, 2019, collectively resulting in proceeds of approximately $3 billion to insiders.

6.       On October 28, 2019, mere weeks after the offerings were completed, investors learned the truth about Tim Hortons's hyped growth initiatives when the Company announced disappointing financial results for the third quarter ended September 30, 2019.  Specifically, Defendants acknowledged that "results at Tim Hortons were not where we want them to be with global comparable sales dipping into negative territory" and admitted that "discounting [associated with Tims Rewards] is slightly more than offsetting the traffic levels, which is causing a little bit of softness in sales."

7.       On this news, the price of Restaurant Brands common stock declined $2.59 per share, or approximately 4%, from a close of $68.45 per share on October 25, 2019, to close at $65.86 per share on October 28, 2019.

8.       This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) the Company's Winning Together Plan was failing to generate substantial, sustainable improvement within the Tim Hortons brand; (2) the Tims Rewards loyalty program was not generating sustainable revenue growth as increased customer traffic was not offsetting promotional discounting; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock, Plaintiff and other members of the Class have suffered significant damages.

## II.      JURISDICTION AND VENUE

10.      Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

11.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Restaurant Brands conducts business in this District, its shares are traded on the NYSE and many of the acts and conduct that constitute the violations of law complained of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

13.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## III.      PARTIES

14.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Restaurant Brands common stock at artificially inflated prices during the Class Period and has been damaged thereby.

15.     Defendant Restaurant Brands is a Canadian corporation headquartered at 130 King Street West, Suite 300, Toronto, Ontario M5X 1E1, Canada.

16.     Defendant José E. Cil ("Cil") has served as Chief Executive Officer of the Company since January 2019, and previously served as the Company's President, Burger King since December 2014.

17.     Defendant Matthew Dunnigan ("Dunnigan") has served as Chief Financial Officer of the Company since January 2018, and previously served as Treasurer of the Company from October 2014 until January 2018.

18.     Defendant Joshua Kobza ("Kobza") has served as Chief Operating Officer of the Company since January 2019, and previously served as Chief Technology Officer and Development Officer of the Company from January 2018 to January 2019, and as Chief Financial Officer of the Company from December 2014 to January 2018.

19.     Defendant Alexandre Macedo ("Macedo") served as the Company's President, Tim Hortons from December 2017 until December 2019, and previously served as the Company's President, Burger King North America from April 2013 until December 2017.

20.     Defendants Cil, Dunnigan, Kobza, and Macedo are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Restaurant Brands's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability

and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

22.    Restaurant Brands and the Individual Defendants are collectively referred to herein as "Defendants."

23.    Non-party 3G Restaurant Brands Holdings LP ("3G RBH")—an affiliate of 3G Capital Partners Ltd. ("3G Capital")—is Restaurant Brands's controlling shareholder.  As of the start of the Class Period, 3G RBH and its affiliates beneficially owned approximately 41% of Restaurant Brands's common stock.

**IV.    SUBSTANTIVE ALLEGATIONS**

24.    Restaurant Brands is one of the world's largest restaurant chains with over 27,000 Tim Hortons, Burger King, and Popeyes restaurants in more than 100 countries and U.S. territories as of December 31, 2019.

25.    The Company's three restaurant brands operate under similar franchise business models that are managed independently.  Restaurant Brands's business generates revenue from the following sources: (1) franchise revenues, consisting primarily of royalties based on a percentage of sales reported by franchise restaurants and franchise fees paid by franchisees; (2) property revenues from properties the Company leases or subleases to franchisees; and (3) sales at restaurants owned by the Company.  In addition, the Tim Hortons business generates revenue from

sales to franchisees related to supply chain operations, including manufacturing, procurement, warehousing and distribution, as well as sales to retailers.

26.     Founded in 1964, Tim Hortons is one of the largest donut/coffee/tea restaurant chains in North America and the largest in Canada as measured by total number of restaurants.  As of December 31, 2019, Restaurant Brands owned or franchised a total of 4,932 Tim Hortons restaurants.  Tim Hortons restaurants are quick service restaurants with a menu that includes premium blend coffee, tea, espresso-based hot and cold specialty drinks, fresh baked goods, including donuts, Timbits, bagels, muffins, cookies and pastries, grilled paninis, classic sandwiches, wraps, soups and more.

27.     Founded in 1954, Burger King is the world's second largest fast food hamburger restaurant chain as measured by total number of restaurants.  As of December 31, 2019, Restaurant Brands owned or franchised a total of 18,838 Burger King restaurants in more than 100 countries and U.S. territories.  Burger King restaurants are quick service restaurants that feature flame-grilled hamburgers, chicken and other specialty sandwiches, french fries, soft drinks and other affordably-priced food items.

28.     Founded in 1972, Popeyes is the world's second largest quick service chicken concept as measured by total number of restaurants.  As of December 31, 2019, Restaurant Brands owned or franchised a total of 3,316 Popeyes restaurants.  Popeyes restaurants are quick service restaurants that distinguish themselves with a unique "Louisiana" style menu featuring fried chicken, chicken tenders, fried shrimp and other seafood, red beans and rice and other regional items.

29.     On April 24, 2018, Restaurant Brands unveiled its Winning Together Plan designed to improve performance within the Company's Tim Hortons brand while focusing on three key pillars: restaurant experience; product excellence; and brand communications.  As explained by then-Chief Executive Officer Daniel S. Schwartz: (1) restaurant experience "encompasses interactions with our guests, both inside and outside of our restaurants"; (2) product excellence "involves a focus on offering products that our guests love," including "furthering our coffee leadership in Canada" and "improving the quality of our lunch products"; and (3) brand communications is "focused on launching impactful marketing campaigns, which highlight the great values that define [Tim Hortons]."

30.     Less than a year later, on March 20, 2019, Restaurant Brands announced the launch of Tims Rewards—a new loyalty program for Tim Hortons customers in Canada.  Under the Tims Rewards program, customers would be eligible for a free hot brewed coffee, hot tea, or baked good after every seventh paid visit to a participating Tim Hortons restaurant.

31.     On April 10, 2019, Restaurant Brands announced that it was expanding the Tims Rewards program to include customers in the United States.

**A.     Defendants' False and Misleading Statements**

32.     The Class Period begins on April 29, 2019, to coincide with the filing of Restaurant Brands's financial results for the first quarter ended March 31, 2019, with the SEC.  Among other things, Restaurant Brands reported 0.5% system-wide year-over-year sales growth for Tim Hortons on system-wide sales of $1.547 billion.  To this end, Defendant Cil assured investors that the "[u]nderlying fundamentals at TIM HORTONS® remain strong" as the brand "continues to

deliver on [the] Winning Together Plan."  Similarly, Defendant Cil touted that the Tims Rewards

"launche[d] . . . with strong engagement."

33.    During the Company's quarterly conference call with analysts and investors held

that same day, Defendant Cil highlighted "positive results across the Winning Together initiatives

we've implemented at Tim Hortons over the past year, including the exciting launch of our new

Tims rewards programs at the end of the quarter."  According to Defendant Cil:

> We're now 5 quarters into the revamp of our strategy at Tims with
> a strong leadership team executing on the Winning Together plan
> that we've built alongside our restaurant owners early last year.
> Throughout 2018, we introduced a number of building blocks
> designed to drive long-term sustainable sales growth. . . . As a result,
> we saw a shift in direction and momentum of our sales performance
> in Canada demonstrated by our sales growth building throughout the
> year to our Q4 results in which we saw comparable sales increase
> by just over 2%.

34.    Defendant Cil further touted "the successful launch of our Tims rewards program,

which has exceeded our expectations in its first few weeks,"  explaining:

> While it's still early, after just the first 5 weeks, approximately 20%
> of Canada's population has used the loyalty program with almost
> half of our daily transactions now scanning the loyalty card.  For
> context, we believe this level of participation by Tims' guests in the
> first few weeks of the program has more than doubled the
> participation rate in some of the best-in-class loyalty programs of
> competitors even several years after their launch.
>
> We believe, longer term, this represents a tremendous opportunity
> to utilize the insights provided by this guest-centric data to better
> understand our guests' behaviors, their needs and wants, to better
> market to our guests directly and to better inform our business
> decisions.  We look forward to building our base of guests on the
> loyalty program over the balance of this year and believe this
> platform will be a valuable asset that allows us to evolve the brand
> and drive even more innovation over the coming years.

35.   Similarly, in response to analyst questions regarding the benefits of the Tims Rewards loyalty program, Defendant Kobza represented:

> Indeed, we are really pleased with the results so far on loyalty. As I think José mentioned a little bit ago, the engagement from our guests so far has been really impressive. We have something like 1/2 of our transactions already every day going through this new loyalty program in a very short period of time and I think that's really exciting. To your point, I think the -- really the most exciting piece about that maybe -- or probably 2 things. One, it's allowing us to give something back to our most loyal guests and kind of reward their loyalty to our brand. I think that's something that's really special. And two, going back to the point that I made to Nicole's question earlier, it's helping us already in just such a very short period of time to be able to understand our business much better. I would tell you, it's already changing the way that we look at the business, that we're able to understand the business to be able to look at things on a guest-by-guest perspective. And so I think that we're already figuring out how it's going to change, how we look at products and promotions and I think it's going to change the way that we manage the business here already this year in 2019.

36.   Similarly, in response to analysts questions regarding the Company's outlook on competition on Tim Hortons in Canada, Defendant Cil further assured explained:

> And I think what's encouraging as we look at the long-term plans and prospects for the business in Canada for Tims is that with the key fundamentals of the Winning Together plan, the building blocks that I've discussed, that we've discussed quite a bit, Breakfast Anytime, beverage innovation, breakfast and lunch innovation, our brand communications plan, reimaging, all these building blocks continue to work well in the quarter and they continue to work well today. Also, as we mentioned, the loyalty program being launched saw quite a bit of success. It's very much in line with what we saw in the results and the test, and the impact on same-store sales was modestly positive initially, and we think there's huge guest uptick and we feel we're just at the beginning of loyalty and what it could do for the business long term. So we're excited about the plans we have.

37.     During the Company's May 15, 2019 Investor Day presentation, Defendants continued to tout the success of the Winning Together Plan and the Tims Rewards loyalty program. For example, Defendant Macedo explained that, "with all our focus on driving the business, we're executing very well on the core elements of our Winning Together plan that's driving our sustainable growth."  To this end, Defendant Macedo highlighted for investors several aspects of the Company's menu innovation efforts:

> [O]ur first step towards adjusting the current trends was simple and required no product innovation at all.  It started by expanding our breakfast hours and serving breakfast anytime during the day, Breakfast Anytime.  This new platform drove a significant amount of sales to our restaurants.  And from there, we started to innovate in breakfast items with familiar tasteful profiles, like the waffle sandwich and, most recently, the French toast sandwich, both very successful.
>
> This month, we are making further progress.  Two of the most dominant health trends in North America today are reduced portion sizing and high-protein options.  In order to cater to these consumer trends, today we launched omelette bites, a tasty protein-based snack for the guests that are on the go.
>
> Also, all the exciting trend of meatless proteins that you probably read in the news, we just began a market test today for a beyond meat breakfast platform.   Our plant-based protein breakfast offerings will be served all day, and we expect to roll them out nationally before the end of summer.
>
> So as you can see, we have a lot under way to drive long-term sales at Tims.

38.     With respect to the Tims Rewards loyalty program, Defendant Macedo stated:

> [B]eyond a doubt, the largest driver for long-term sales growth under the restaurant experience pillar is our new loyalty program.

*     *     *

We launched our loyalty program nationally towards the end of Q1. So with 6 weeks under our belt, how are we doing so far?  Simply put, the reaction of our guests has totally exceeded our expectations.

In the last 6 weeks, over 20% of the population of Canada has used our loyalty program.  And now around 50% of our guests scan loyalty in our restaurants each and every day, and this data point is very powerful.  Other global brands operating in the same space as we are have taken years to achieve levels of adoption that we were able to secure after only 6 weeks.  This is a testament to the nature of our loyal and frequent guests.

More importantly, we have seen improvement to our restaurant traffic in all the regions of the country.  Loyalty has been the biggest driver of incremental traffic of anything we've done in the last few years.  And it's only the beginning.

Now that usage is already very high, we will focus our efforts with Tims rewards and increasing guest registration to the program.  With registration, we get to know our guests better.  And knowing them better allows us to deploy more personalized marketing initiatives and campaigns that drive sales more effectively than any mass national campaign could.  The program allows us to measure and track same-customer sales in addition to same-store sales.  This will take time to build, but we expect it will be a main comp driver for Tim Hortons in Canada for years to come.

39.     On August 2, 2019, Restaurant Brands filed its financial results for the second quarter ended June 30, 2019, with the SEC.  Among other things, Restaurant Brands reported 1.6% system-wide year-over-year sales growth for Tim Hortons on system-wide sales of $1.716 billion.

40.     During the Company's quarterly conference call with analysts and investors held that same day, Defendants continued to tout Restaurant Brands's Winning Together Plan and the Tims Rewards loyalty program.  For example, Defendant Cil touted the Company's execution on its Winning Together Plan, stating:

The Tim Hortons team continues to execute on the Winning Together plan that we shared with you in May and we're pleased with the positive momentum we've generated in the business over

the past year.  As we've discussed in the past, we're focused on investing in key areas of the business that will allow us to drive long-term growth, including the continued rollout of our Welcome Image, on-trend product innovations, advancements in the quality and consistency of our coffee experience and our exciting new loyalty program.  In the second quarter, we saw the positive trends in our breakfast platform continue.  The Omelette Bites we introduced in the quarter performed well and we're working on new, great tasting flavors to be showcased in our restaurants in Canada in the second half of this year.  We also launched the Beyond Meat breakfast sandwich towards the end of the quarter that is performing well and driving healthy levels of incrementality.

41.     With respect to the Tims Rewards loyalty program, Defendant Cil explained:

We're also very excited about the success of our loyalty program, Tims Rewards.  After a rapid ramp-up phase over the course of about a month, approximately half of all transaction swipe were click Tims Rewards.  This reflects very strong adoption and buy-in with more than 7 million people using the program every month after just a few short months.  We're really pleased with the level of engagement from our guests and believe we're establishing an exciting platform that we can use to drive improved guest experience and sales growth in the future.  As we've talked about before, the overall impact of Tims Rewards on our comparable sales so far has been neutral, however, it has helped us drive an encouraging level of incremental traffic, bringing more guests into our restaurants more often.  Our next step is to use the powerful insights we're gathering from the program to offer our guests rewards and promotions tailored to their purchasing interests.  We believe this will provide a solid basis and valuable program for driving incremental sales across our large customer base over time.

42.     On August 9, 2019, HL1 17 LP—an affiliate of 3G RBH—announced the public offering of 24,000,000 shares of Restaurant Brands common stock at a price of $72.50 per share, for gross proceeds of approximately $1.7 billion.

43.     On September 4, 2019, HL1 17 LP announced the public offering of 16,960,717 shares of Restaurant Brands common stock at a price of $75.10 per share, for gross proceeds of $1.3 billion.

44.     In connection with these offerings, Restaurant Brands filed a shelf registration statement in which Defendants touted the Company's growth prospects, stating, among other things, the Restaurant Brands was "a financially strong company built upon a foundation of three thriving, independent brands with significant global growth potential" and explaining that "[n]ew product development is a key driver of the long-term success of our brands" because "the development of new products can drive traffic by expanding our customer base, allowing restaurants to expand into new dayparts, and continuing to build brand leadership in food quality and taste."

45.     Defendants' statements about the Company's business and operations were materially false and/or misleading when made because Defendants misrepresented and/or failed to disclose that: (1) the Company's Winning Together Plan was failing to generate substantial, sustainable improvement within the Tim Hortons brand; (2) the Tims Rewards loyalty program was not generating sustainable revenue growth as increased customer traffic was not offsetting promotional discounting; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

**B.     The Truth Emerges**

46.     Plaintiff and other investors began to learn the truth about the Company's execution of its Winning Together Plan and Tims Rewards loyalty program on October 28, 2019, when the Company announced disappointing financial results for the third quarter ended September 30, 2019.  Among other things, the Company reported a 0.1% system-wide year-over-year sales decline for Tim Hortons—representing a 1.4% same-store sales decline—on system-wide sales of $1.774 billion.

47.     During the Company's quarterly conference call with analysts and investors held that same day, Defendant Cil acknowledged that "results at Tim Hortons were not where we want them to be with global comparable sales dipping into negative territory."  Critically, Defendant Cil also admitted that "discounting [associated with Tims Rewards] is slightly more than offsetting the traffic levels, which is causing a little bit of softness in sales."  Additionally, in response to an analyst question as to why the introduction of plant-based products did not "drive sales" despite the fact that "other brands had seen successes" with plant-based products, Defendant Cil further explained that many of the Tim Horton's plant-based products "were more limited-time offers to see if there was an opportunity there for growth . . . [a]nd we felt ultimately that it was only going to be a short-term limited-time offer, which is how it performed and how we dealt with it."

48.     On this news, the price of Restaurant Brands common stock declined $2.59 per share, or approximately 4%, from a close of $68.45 per share on October 25, 2019, to close at $65.86 per share on October 28, 2019.

49.     Evidence demonstrating Restaurant Brands's inability to generate sustainable growth from the Winning Together Plan and the Tims Rewards loyalty plan continued to emerge after the end of the Class Period.  For example, in connection with the February 10, 2020 publication of the Company's financial results for the fourth quarter ended December 31, 2019, Defendant Cil admitted that the Company's "year-on-year decline in comparable sales of negative 4.6% in Canada was primarily driven by the investments in our [Tims] Rewards program we're making to attract millions of Canadians to join and participate in our Tims [Rewards] loyalty program, which contributed approximately negative 3% to our reported comparable sales figure."  To this end, Defendant Cil admitted that "loyalty will continue to be a drag on sales for the coming

several quarters as we convert loyalty guests to registered loyalty guests and start deploying incremental offers at scale."

## V.      PLAINTIFF'S CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Restaurant Brands common stock during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, 3G Capital and its affiliates, directors and officers of Restaurant Brands, and their families and affiliates.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

52.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

 a.     Whether Defendants violated the Exchange Act;

 b.     Whether Defendants omitted and/or misrepresented material facts;

 c.     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

 d.     Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

 e.     Whether the price of Restaurant Brands common stock was artificially inflated; and

       f.     The extent of damage sustained by members of the Class and the appropriate measure of damages.

53.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

54.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions.  Plaintiff has no interests that conflict with those of the Class.

55.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VI.   APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

56.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

       a.     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

       b.     The omissions and misrepresentations were material;

       c.     The Company's common stock traded in an efficient market;

       d.     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

       e.     Plaintiff and the Class purchased Restaurant Brands common stock between the time Restaurant Brands and the Individual Defendants misrepresented or failed to disclose material facts and the time the

true facts were disclosed, without knowledge of the misrepresented

or omitted facts.

57.     At all relevant times, the market for Restaurant Brands common stock was efficient because: (1) as a regulated issuer, Restaurant Brands filed periodic public reports with the SEC; and (2) Restaurant Brands regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   NO SAFE HARBOR

58.     Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of Restaurant Brands who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

59.      Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The price of Restaurant Brands common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of Restaurant Brands common stock during the Class Period, Plaintiff and the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## IX.   SCIENTER ALLEGATIONS

60.      During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Restaurant Brands common stock during the Class Period.

## X.   CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violation of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

61.      Plaintiff incorporates by reference the allegations in the preceding paragraphs.

62.      During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Restaurant

Brands common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

63.     Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

65.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

66.     The Individual Defendants acted as controlling persons of Restaurant Brands within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of

the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular accounting practices giving rise to the securities violations as alleged herein, and exercised the same.

68.     As described above, Restaurant Brands and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Restaurant Brands common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

    a.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

    b.     Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    c.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      d.      Such other and further relief as the Court may deem just and proper.

## XI.   <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: December 21, 2020                 Respectfully submitted,

*s/ Naumon A. Amjed*
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Naumon A. Amjed
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com

***Attorneys for Plaintiff James E. Dorman***

22

## CERTIFICATION

I, James E. Dorman, declare that:

1.      I have reviewed the facts and allegations of the complaint and authorize its filing.

2.      I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4.      My Class Period purchase and sale transaction(s) in Restaurant Brands International Inc. securities that are the subject of this action are attached in Schedule A. I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5.      During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _12-18-2020_

James E. Dorman

## SCHEDULE A
### Account 1

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Com Stk | Buy | 8/23/2019 | 10 | $75.15 |
| Com Stk | Buy | 10/3/2019 | 0.07 | $71.22 |
| Com Stk | Buy | 10/16/2019 | 10 | $69.08 |

### Account 2

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Com Stk | Buy | 8/23/2019 | 10 | $75.14 |
| Com Stk | Buy | 10/3/2019 | 0.07 | $71.22 |
| Com Stk | Buy | 10/16/2019 | 10 | $69.08 |